UNITED STATES DISTRICT COURT

FOR THE STATE OF RHODE ISLAND

| | | |
|---|---|---|
| JUAN G. EVORA, Plaintiff | * | UNITED STATES DISTRICT COURT |
| Vs. | * | CASE#:____________________ |
| STATE OF RHODE ISLAND, | * | |
| DEPARTMENT OF CORRECTIONS | * | |
| ADULT CORRECTIONAL INSTITUTIONS, | * | |
| ASHBEL T. WALL, DIRECTOR OF THE | * | |
| DEPARTMENT OF CORRECTIONS ADULT | * | |
| CORRECTIONAL INSTITUTIONS, | * | |
| JAKE GADSDEN, ASSISTANT DIRECTOR | * | |
| OF DEPARTMENT OF CORRECTIONS | * | |
| ADULT CORRECTIONAL INSTITUTIONS, | * | |
| WALTER WHITMAN, WARDEN MEDIUM | * | |
| SECURITY #1 FACILITY, | * | |
| KIRK KASZYK, DEPUTY WARDEN | * | |
| MEDIUM SECURITY #1 FACILITY, | * | |
| ROY HILTERMANN, DEPUTY MEDIUM | * | |
| SECURITY #1 FACILITY, | * | |
| ROBERT J. CATLOW, CHIEF INVESTI- | * | |
| GATOR DEPARTMENT OF CORRECTIONS | * | |
| ADULT CORRECTIONAL INSTITUTIONS, | * | |
| JOSEPH FORGUE, ACTING CHIEF | * | |
| INVESTIGATOR DEPARTMENT OF | * | |
| CORRECTIONS ADULT CORRECTIONAL | * | |
| INSTITUTIONS, | * | |
| BANNON, CAPTAIN MEDIUM SECURITY | * | |
| #1 FACILITY, | * | |

DAVID BAPTISTA, INVESTIGATOR *
DEPARTMENT OF CORRECTIONS ADULT *
CORRECTIONAL INSTIOTUTIONS, *
LINDA ROSE, INVESTIGATOR DEPART- *
MENT OF CORRECTIONS ADULT CORREC- *
TIONAL INSTITUTIONS, *
MIKE FROST, VIDEO SECURITY SPEC- *
IALIST DEPARTMENT OF CORRECTIONS *
ADULT CORRECTIONAL INSTITUTIONS, *
DUFFY, LIEUTENANT MEDIUM SECUR- *
ITY #1 FACILITY, *
JANKOWSKI, LIEUTENANT MEDIUM *
SECURITY #1 FACILITY, *
LISA SODERLUND, REPRESENTATIVE *
COUNSELOR MEDIUM SECURITY #1 *
FACILITY, *
BIBEAULT, CORRECTIONAL OFFICER *
MEDIUM SECURITY #1 FACILITY, *
KILLIER, CORRECTIONAL OFFICER *
MEDIUM SECURITY #1 FACILITY, *
TONY/JOHN DOE, CORRECTIONAL *
OFFICER MEDIUM SECURITY #1 *
FACILITY, *
COOPER, CORRECTIONAL OFFICER *
MEDIUM SECURITY #1 FACILITY, *
JOHN DOE, NURSE MEDIUM SECURITY *
#1 FACILITY, *
JOHN DOES AND JANE DOES, ET. AL. *

CA 06 94 S

## CIVIL RIGHTS COMPLAINT

This is civil action filed pursuant to 42 USCA 1983 by the Plaintiff, Juan G. Evora, an inmate at the Rhode Island Department of Correction Adult Correctional Institutions, in Cranston, Rhode Island, alleging violations of his constitutional rights by the named Defendant's. The Plaintiff is seeking declaratory judgment, compensatory and punitive damages and injunctive relief. The Plaintiff seeks trial by judge.

## JURISDICTION

1. This is a civil rights action pursuant to 42 USCA 1983. This Court has jurisdiction under 28 USCA 1331 and 1343(3). The Plaintiff also invokes the pendent jurisdiction of this Court to decide and hear matters relating to state law, as well as claims relating to policies and practices of the Rhode Island Department of Corrections.

## PARTIES

2. The Plaintiff is an incarcerated inmate at the Rhode Island Department of Correction Adult Correctional Institutions, in Cranston, Rhode Island. He is presently housed and classified to the Medium Security #1 Facility.

3. Defendant Ashbel T. Wall, is the Director of Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

4. Defendant Jake Gadsden, is the Assistant Director of Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

5. Defendant Walter Whitman, is the Warden of the Medium Security #1 Facility, (DOC) (ACI), in Cranston, Rhode Island. He is sued in his official and individual capacity.

6. Defendant Kirk Kaszyk, Deputy Warden of the Medium Security #1 Facility, (DOC) (ACI), in Cranston, Rhode Island. He is sued in his official and individual capacity.

7. Defendant Roy Hiltermann, Deputy of Medium Security #1 Facility, (DOC) (ACI), in Cranston, Rhode Island. He is sued in his official and individual capacity.

8. Defendant Robert Catlow, Chief Investigator of the Rhode Island Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

9. Defendant Joseph Forgue, Acting Chief Investigator of the Rhode Island Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

10. Defendant Bannon, Captain Second Shift of the Medium Security #1 Facility at the Department of Corrections Adult Corrections Institutions, in Cranston, Rhode island. He is sued in his official and individual capacity.

11. Defendant David Baptista, Investigator of the Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

12. Defendant Linda Rose, Investigator Department of Corrections Adult Correcttional Institutions, in Cranston, Rhode Island. She is sued in her official and individual capacity.

13. Mike Frost, Video Security Specialist Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his offial and individual capacity.

14. Duffy, Lieutenant Medium Security #1 Facility at the Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

15. Jankowski, Lieutenant Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

16. Lisa Soderlund, Representative Counselor Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode island. She is sued in her official and individual capacity.

17. Bibeault, Correctional Officer Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

18. Killier, Correctional Officer Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

19. Tony(John Doe), Correctional Officer Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

20. Cooper, Correctional Officer Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

21. Joseph Marocco, Director Health Service Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

22. John Doe, Nurse Medical Unit Medium Security #1 Facility Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. He is sued in his official and individual capacity.

23. John Doe's and Jane Doe's, Et. Al. Department of Corrections Adult Correctional Institutions, in Cranston, Rhode Island. are sued in their official and individual capacity.

INDEX LIST OF DEFENDANT'S IN NUMERICAL ORDER

24. Department of Corrections Adult Correctional Institutions,

Defendant #1 Ashbel T. Wall, Director R.I. (DOC) (ACI),

Defendant #2 Jake Gadsden, Assistant Director, R.I. (DOC) (ACI),

Defendant #3 Walter Whitman, Warden Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #4 Kirk Kaszyk, Dep.. Warden Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #5 Roy Hiltermann, Deputy Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #6 Robert Catlow, Cheif Invest. R.I. (DOC) (ACI),

Defendant #7 Joseph Forgue, Acting Chief Invest. R.I. (DOC) (ACI),

Defendant #8 Bannon, Capt. Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #9 David Baptista, Invest. R.I. (DOC) (ACI),

Defendant #10 Linda Rose, Invest. R.I. (DOC) (ACI),

Defendant #11 Mike Frost, Video Security Specialist R.I. (DOC) (ACI),

Defendant #12 Duffy, Lt. Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #13 Jankowski, Lt. Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #14 Lisa Soderlund, Rep. Counselor R.I. (DOC) (ACI),

Defendant #15 Bibeault, C/O Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #16 Killier, C/O Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #17 Tony (John Doe), C/O Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #18 Cooper, C/O Med. Sec. #1 R.I. (DOC) (ACI),

Defendant #19 Joseph Marocco, Direct. Health Services R.I. (DOC) (ACI),

Defendant #20 John Doe, Nurse Med. Unit Med. Sec. #1 R.I. (DOC) (ACI),

Defendant's #21 John/Jane Doe's, Et. Al. R.I. (DOC) (ACI).

25. All Defendants have acted under the color of state law at all times relevant to this complaint.

## FACTS

25. That on the 7th day of October, 2005 Plaintiff Juan G. Evora was housed in F-Right Module Cell-17-B of the Medium Security #1 Facility.

26. That on the 7th day of October, 2005 Defendant's Bibeault C/O 15th Def., Tony (John Doe) C/O 17th Def., and Cooper C/O 18th Def. were working the day shift.

27. That on the 7th day of October, 2005 the Plaintiff Juan G. Evora, at approximately at 14:15:00 (2:15 PM) and 14:40:00 (2:40 PM) on the first shift Plaintiff walked into assigned cell F-Right Module cell-17 to put away literature and religious books that filled Plaintiff's arms. As Plaintiff was placing his literature and religious books upon the bottom cell bunk, he standing in assigned cell-17 F-Right Module facing the bunks with back to cell door, when he was assaulted from behind. Plaintiff's face slammed into the top bunk and his shin slammed into the bottom bunk. Which caused unconsciousess and disorientation. Some sort of stuggle ensued and the assailant fled from Plaintiff's assigned cell-17 F-Right Module.

28. That on the 7th day of October, 2005 the Plaintiff was returning from working in the recreation yard where he was employed as yard maintenance, and from religious studies and prayer. Upon entering F-Right Module during the mass 14:15:00 (2:15 PM) movement, Defenendant's C/O Bebeault 15th Def., C/O Tony(John Doe) 17 th Def., and C/O Cooper 18th Def. all left their post unattended to watch video movies on televisions that are stored in personal

cabinets stored in F-Module Control Center.

29. The Plaintiff Juan G. Evora, was a victim of assault by a known racist gang member of the "Lost Boys" on the 7th day of Oct-ober, 2005 at approximately at 14:15:00 (2:15 PM) and 14:40:00 (2-:40 PM) Plaintiff was standing in his assigned cell-17 F-Right Mo-dule facing the bunks with back to cell door when he was assaulted from behind, and his face slammed into top bunk and shin into the bottom bunk. Which caused unconsciousness and disorientation. Some sort of struggle ensued and the assailant fled from Plaintiff's assigned cell-17 F-Right Module Medium Security #1 Facility. At approximately at 15:30:00 (3:30 PM) the second shift count cleared and all cell doors opened for day room recreaction. I then report-ed without delay to C/O Killier 16th Def. second shift at control center F-Right Module. I was seeking medical treatment bleeding profusely from the following injuries: broken nose, broken eye so-cket, and laceration over right eye, and right shin. I was ordered to walk myself to medical unit by C/O Killier 16th Def. due to the fact the staff did not want any blood on them.

30. At approximately 15:45:00 (3:45 PM) Plaintiff Juan G. Evora entered the Medical Unit of Medium Security #1 Facility by himself seeking emergency medical treatment. Captain Bannon, 8th Def., Jo-hn Doe, Nurse 20th Def., and C/O John Doe, 21st Def. had looked over me for a brief moment. Investigating my hands for marks of a fist fight, I had no such marks on hands of any nature. I was then ordered by Captain Bannon, 8th Def. to be transported to outside medical Stat Care Facility.

31. On the 7th day of October, 2005 Acting Chief Joseph Forgue Invest. 7th Def., directed David Baptista Invest. 9th Def., and Linda Rose Invest. 10th Def. to conduct interviews with Plaintiff Juan G. Evora. Baptista Invest. 9th Def. and Rose Invest. 10th Def. had taken pitures, and asked who the person was what type of weapon. When Plaintiff stated he was assaulted from behind and never seen the person, then requested video surveillance so that he would know who assaulted him along with Investigators. Defendant's got very upset and left the hospital.

32. Upon arriving at Stat Care Facility, in Cranston, Rhode Island. Being transported by C/O John Doe 21st Def.. The Stat Care Facility Staff stated the injuries were to severe to treat there. I was then transported to Rhode Island Hospital Trauma Unit. There X-Rays were taken. Surgery could not be performed on right eye socket. I was informed by Rhode Island Hospital Medical Staff, I had a broken nose, broken eye socket, sutures over right eye, and injuries to right shin. The Doctor at Rhode Island Hospital stated I would need plastic surgery to correct the damages. I was also informed that irreparable damages have been caused to my nervous system.

33. That on the 8th day of October, 2005 Plaintiff was then transported to the Intake Service Center R.I. (DOC) (ACI). Plaintiff was placed by C/O's John/Jane Doe's 21st Def. in the Isolation Unit cell-A. Plaintiff was denied blankets, pillow, telephone call to attorney or family, clergy visits, and recreational movement. The Isolation Unit is a more harsh punishment then Segregation Unit. Plaintiff was denied clergy visits of any nature. Plaintiff was denied the right to have his religious Holy Qur'an, and religious

services in the Holy Month of Ramadan, not allowed to partake in any religious services violated Plaintiff's first amendment right of the United States Constitution. Constitutional Rights had been violated by Defendant's who placed Plaintiff locked and fed in (L-FI) pending investigation.

34. That on the 9th day of October, 2005 Plaintiff was then Transported from Intake Service Center (DOC) (ACI) Isolation Unit to Medium Security #1 Segregation Unit (DOC) (ACI) by direct orders from the Defendant Bannon Capt. 8th Def. based on fabricated reports from investigators Baptista 9th Def. and Rose 10th Def., who both profiled the case only. Discriminated against the Plaintiff for being a practicing Muslim. Evidence that was known to the Department of Corrections was destroyed to cover up crime scene, hate crime, racial profiling, discrimination, and dereliction of duties of (DOC) (ACI) Staff.

35. Plaintiff Juan G. Evora had his due process rights violated by the Defendant's all Defendant's refused to allow Plaintiff any attorney calls, nor any calls to outside law agencies. Plaintiff's sixth and fourteenth amendment rights had been violated. A direct result due to the Defendant's hiding the Plaintiff from public view until injuries had somewhat healed. Plaintiff was denied access to clergy members Imam Abdul Hameed and Rev. Franklin Lobo which violated his first amendment right.

36. On the 12th day of October, 2005 at approximately 19:33:00 (7:33 PM) Lt. Duffy 12th Def. read Plaintiff Juan G. Evora the formal charges of the disciplinary infraction by charging staff member Baptista Invest. 9th Def.. At which time Plaintiff requested the video surveillance tapes of F-Right Module from the time of 14:15:-00 (2:15 PM) through 15:45:00 (3:45 PM) to be presented at the disciplinary hearing in his defense. To show that he was assaulted from behind and the victim. Plaintiff only acted in self defense out of human nature instinct. Plaintiff unaware of any witnesses due to being placed in isolation and segregation, and not allowed to prepare an adequate defense. Which violated his due process rights.

37. Mike Frost, Video Security Specialist 11th Def. was in dereliction of his duties by not reviewing all video surveillance tapes of the surveillance cameras in F-Right Module which are two in working order at time of crime of assault. That without any delay video surveillance tapes of F-Right Module "crime scene" should have all been fully reviewed. Defendant's would have truly done a full investigation thorough and without delay if the victim of assault was not a practicing Muslim who is Puerto Rican/Cape Verdean. If a inmate that was Puerto Rican, Afro American, Asian, or Cape Verdean committed the assault upon an Italian inmate the whole Brotherhood of Correctional Officers of the (DOC) (ACI) would of truly done an all out full thorough investigation. Therefore Plaintiff claims racial discrimination, racial profiling, profiling against Muslims. Religious discrimination first amendment violation. Mike Frost, Video Security Specialist 11th Def. destroyed evidence knowingly, by recording over known evidence of crime committed available on the video surveillance tapes.

38. On the 14th day of October, 2005 at approximately 09:00:00 (9:00 AM) a Disciplinary Hearing was held at Medium Security #1 Facility in Segregation Unit. Done in clear violation of Plaintiffs due process rights. It was substantive due process and not due process. Plaintiff had his Miranda Rights violated by the Defendants, when Defendants had known they would be criminally charging the Plaintiff. Plaintiff was found guilty without any supporting evidence, without being allowed to produce evidence to prove his innocence, nor allowed to prepare an adquate defense due to being in islation and segregation, where there was no legal material of any nature, and placed in seregation with limited material and no policy 11.01-4 DOC; Code Of Inmate Discipline; 12/13/04 available.

39. On the 14th day of October, 2005 at approximately 09:25:52 (9:25 AM) Disciplinary Hearing was held at the Medium Security #1 Facility Segregation Unit by Lt. Jankowski 13th Def. and Rep. Counselor Lisa Soderlund 14th Def.. The Plaintiff was charged with infraction description: fighting. Plaintiff's statement; denies starting the fight says he was attacked from behind and had to defend himself from this point on. Witness(s) statements: Plaintiff requested video surveillence tapes of both cameras in F-Right Module of Medium Security of the 7th day of October, 2005 from 14:15:00 (2:15 PM) through 15:45:00 (3:45 PM) Medium Security Facility #1, as evidence in his defense. The request denied by (DOC) (ACI) Defendants. Hearing Officers statement: basded on report and inmate statement that he did engage with inmate Grilli in an altercation after he was attacked. Credit three days. Statement submitted to board by inmate will be forwarded to SIU for further follow up.

Sanctions: Disciplinary confinement and Loss of Good Time.

40. Plaintiff appealed the sanctions of the Disciplinary Hearing held on the 14th day of October, 2005 to Walter Whitman, Warden 3rd Def. of the Medium Security #1 Facility. On the 4th day of November, 2005 decision of the wardens review was denied. Hearing sanctions: Disciplinary confinement for 15 days, and Loss of Good Time for 15 days. Statement of Warden: A review of the materials pertaining to your disciplinary hearing has resulted in the following determination on your request for wardens review, denied, rationale based on information about infravtion.

41. On the 1st day of November, 2005 Plaintiff appealed the Wardens review to Ashbel T. Wall, Director 1st Def. and was not given any response in return. The only time Asbel T. Wall, Director 1st Def. responded regarding this matter was on the 24th of October, 2005 with a written letter informing me, "statement": Ashbel T. Wall, Director 1st Def.: Dear Mr. Evora: After reading your letter dated 10/12/05 letter (received in my office on 10/18/05), a member of my staff contacted one of your facility's Lieutenants and learned that the proper procedure for requesting an attorney telephone call while in disciplinary confinement is to submit a request to your housing Lieutenant. With respect to filing external complaints, you may contact the the Rhode Island State Police directly. The telephone number to their on-grounds is 462-2566. You may also write to them in care of Administration Building A. If you so choose, you (or your attorney) may also contact the office of Attorney General's and/or DARE directly. My office will not make such request on your behalf. Unlike you, I have confidence in this Department's investigatory units, and they remain another

option to you: office of Inspection (regarding staff), 426-2551, Administration Building B, and Special Investigations Unit (regarding Inmates) 462-2282. Consequently, I have forwarded a copy of your letter to the Chief of the Special Investigations Unit (SIU) Robert J. Catlow, Chief Investigator 6th Def. and asked for an investigation into your compliants.

42. On or about the 19th through the 20th day of October, 2005 Plaintiff under went plastic surgery at Rhode Island Hospital in Providence, Rhode Island.

43. Plaintiff avers that since the 7th day of October, 2005 that he has spent well over one hundred hours in shackles due to (DOC) (ACI) policy that inmates are to remain in full shackles at all times on all hospital trips. Defendant's policy was cruel and unusual punishment.

44. Defendant's violated the Eighth Amendment when they were in dereliction of duties and did not protect the Plaintiff from violence at the hands of other inmates. Resulting in a Eighth and Fourteenth Amendment violation. Placing Plaintiff in islation, segregation, loss of visits, loss of good-time, and denial of religious participation was cruel and unusual punishment. Plaintiff was a victim of assault a crime was committed against Plaintiff. The Defendant's had known this racist gang of inmates called the Lost Boys caused a threat of harm to other inmates.

45. On the 27th day of October, 2005 at chow hall at the lunch time feeding Roy Hiltermann, Deputy 5th Def. requested to speak with the Plaintiff after Plaintiff was done speaking with Counselor Lisa Soderlund 14th Def.. Plaintiff approached the Deputy 5th Def. Roy Hiltermann. who then ordered the Plaintiff to turn around

and cuff up. Deputy Hiltermann 5th Def. stated he felt that the Plaintiff should not be in population while another inmate is under investigation by (SIU) investigators. Plaintiff with the utmost respect explained to Deputy 5th Def. that he completed his segregation time of 15-days. Then Plaintiff stated he was the victim of assault. Deputy 5th Def. stated that is not what the eye (my eye) injuries says. Plaintiff just went under plastic surgery and the Deputy 5th Def. was belittling him in front of the inmate population and Medium Security staff. Plaintiff was placed back in segregation per-order of Deputy Roy Hiltermann 5th Def.. Within only minutes of Plaintiff going into segregation, the Deputy 5th Def. per-order of himself released the racist gang member of the Lost Boys into A-Module Medium Security #1 Facility. Where other known members of the Lost Boys live (A-Module). If it was not for Capt. Amaral of Medium Security who over ruled the Deputy 5th Def., I would not of been released the next day from segregation. Deputy 5th Def. put Plaintiff in harms way again, and prevented any witnesses from coming forward against the gang member.

46. On the 19th day of December, 2005 Plaintiff wrote to Robert J. Catlow, Chief Investigator 6th Def.: Dear Mr. Catlow, I am sending this letter to request your services regarding the assault that had taken place on October 7th, 2005. I was assaulted in my cell, my assigned cell F-Right Module Cell-17 Medium Security #1 Facility. Investigative reports are all contridictive of each other. I am respectfully requesting that that you or a member of your department review the tape recordings of F- Right Module on the date of October 7th, 2005 at approximately 2:15 PM through 3:30 PM of that day. Also that the investigation reports are stat-

ing the assault or infraction had taking place in E-Right Module cell-17. Sir I request to have a reinvestigation of the whole matter. Thank you for your time regarding this matter. Please see attached letter from Director Wall 1st Def..

47. Since the 22nd day of October, 2005 the Rhode Island Department of Corrections Adult Correctional Institutions Chaplaincy Team of Medium Security #1 Facility, Clergy member Imam Abdul Hamid, also the Imam of the whole state of Rhode Island. Had explained to me that as a Muslim following the Holy Qur'an and Sunnah of Islam. I was not to transgress against others, that Allah (God) gives mercy, and loves those who show mercy. Being a practicing Muslim in submission and compliance to the Creed of Allah (God). Plaintiff did not seek any form of revenge against any member of the racist gang member(s) of the Lost Boys that attacker was affiliated with. Which all Defendant's are well aware of.

48. The Defendant's and unknown Superior Court Clerk denied the Plaintiff his Due Process right. Plaintiff filed a Civil Actions Complaint in Providence Superior Court on the 11th day of November, 2005 with the Clerk of Court, in Superior Court Providence Rhode Island. Plaintiff was never given a civil docket case number. On the 29th day of December, 2005 Plaintiff mailed a letter in regards to civil docket number. The letter was addressed to, Office of Civil and Criminal Scheduling Superior Court, Providence County, 250 Benefit Street, Providence, Rhode Island 02903. Plaintiff was never given any response. Plaintiff then tried to have the secretary known to Plaintiff as Beth, of the Office of Public Defeenders, personal secretary of Paula Rosin, Chief Appellant Attorney. Secr-

etary Beth could not find the civil complaint through her known contacts at the Office of Civil and Criminal Scheduling Superior Court, Providence County, 250 Benefit Street, Providence, Rhode Island 02903.

49. On the 6th day of January, 2006 Plaintiff was criminally charged in Sixth Division Court Providence County, Providence, Rhode Island with assaulting the inmate James Grilli. The same inmate that is a member of the racist gang called the Lost Boys, and who truly attacked the Plaintiff. The Sixth Division Court docket case #61060473, Plaintiff was given personal recognizance on charge for bail, given the 20th day of January, 2006 for appointment of counsel. Defendant's logged in (DOC) (ACI) records a cash bail of $1,000 on charge for Plaintiff, and logged in personal recognizance on the Plaintiff's attacker who was also criminally charged with assault.

50. Plaintiff avers that due to dereliction of duties, fabricated reports, and Due Process violations. That the Defendant's utilized the criminal justice system as a scare and reprisal to prevent Plaintiff from filing a civil actions complaint, which truly is malicious prosecution.

51. Defendant's since the 7th day of October, 2005 up until and through the malicious prosecution that started on the 6th day of January, 2006 and ended on the 10th day of February, 2006. Plaintiff filed the followingmotions: Motion for Preliminary Hearing, Motion for Discovery Rule 16 and Inspection, and Speedy Trial on the 11th day of January, 2006. The States Prosecutor then dismissed the case 48(a) refusing to prosecute case #61060473 of Sixth Division Court of Providence County.

52. Defendant's individually and collectively had violated State (DOC) (ACI) policy of investigative procedures, Code of Ethics being in dereliction of duties by not securing crime scene, preserving crime scene, and preserving any and all evidence. Not conducting an thorough investigation of witnesses, and affording any and all witnesses safety from known gang members of the racist group members of the Lost Boys. Which denied the Plaintiff Due Process, and lead to malicious prosecution. On the 7th day of October, 2005 sometime during the second shift. After F-Right Module Inmates all had their hands investigated for any signs of a fist fight, all Inmates cleared the investigation. No Inmates had been found with any marks on their hands of any nature, that would be evidence of a fist fight. Inmate James Grilli went into the shower and removed his shirt, C/O Killier 16th Def. observed marks on his body. Which also proves that (SIU) fabricated the interview reports from Stat Care Facility, that Defendant's stated Plaintiff gave a statement.

53. On the 22nd day of February, 2006 Plaintiff requested in person from Kirk Kaszyk, Dep. Warden 4th Def. if there could be any resolution of the disciplinary charge of the infraction on the 7th day of October, 2005 ? Plaintiff then stated that since the criminal prosecution of assault charge was dismissed. Plaintiff was criminally charge for assaulting his attacker in reprisal due to filing civil action compliant in the Superior Court of Providence County, Rhode Island. Also that upon Plaintiff going over (SIU) reports that had all been in cotradiction to each other, that had been denied Plaintiff prior to criminal charge and criminal complaint given to Plaintiff. Plaintiff found after close reviewing of criminal complaint package. That investigative reports had been false, statements they

stated Plaintiff made at Stat Care Facility fabricated. The Dep. Warden 4th Def. and Deputy 5th Def. then threaten to criminally reprosecute Plaintiff again. Dep. Warden Kaszyk 4th Def. and Dep. Hiltermann 5th Def. made it clear that the Plaintiff exhausted all in house remedies, and then stated that disciplinary procedures are not grievanceable to take it to court. He the Dep. Warden 4th Def. already denied the Wardens review of Plaintiff's appeal.

## CLAIMS

### FIRST CAUSE OF ACTION

54. That the actions of all Defendant's #1 through #21, as stated in paragraphs 25 through 53 of this complaint, violated the Eighth Amendment, Fourteenth Amendment, Fisrt Amendment, Sixth Amendment Rights of The United States Constitution. Rights to protect prisoners from violence at the hands of otherprisoners. Deliberate indifference to violent attacks, sexual assault and serious medical need is actionable.

55. That the actions of Defendant's #1 through #21 as stated in paragraphs 25 through 53 of this complaint, violated Eighth Amendment protection against cruel and unusual punishment.

### SECOND CAUSE OF ACTION

56. That the actions of Defendant's #1 through #21, as stated in paragraphs 25 through 53 of this complaint, violated state law and established policy at the Department of Corrections Adult Correctional Institutions.

57. That the actions of Defendant's #1 through #21 as stated in paragraphs 25 through 53 of this complaint, violated Article I, Section 8 of the Rhode Island Constitution, Article XIV, Section of the Rhode Island Constitution.

THIRD CAUSE OF ACTION

58. That the actions of Defendant's Ashbel T. Wall #1 Def., Jake Gadsden #2 Def., Walter Whitman #3 Def., Kirk Kaszyk #4 Def., Roy Hiltermann #5 Def. Robert Catlow #6 Def., Joseph Forgue #7 Def., Bannonon Capt. #8 Def., David Baptista #9 Def., Linda Rose #10 Def., as stated in paragraphs 25 through 53 of this complaint,violated Plaintiff's Fourteenth Amendment Right to Due Process.

FOURTH CAUSE OF ACTION

59. That the actions of Defendant's #1 through #21, as stated in paragraphs 25 through 53 of this complaint, violated Plaintiff's First Amendment Rights of religious freedom, both to an estabishment as well as free exercise thereof.

FIFTH CAUSE OF ACTION

60. That the actions of Defendant's #1 through #21, as stated in paragraphs 25 through 53 of this complaint, violated Plaintiff's Sixth Amendment Rights, right to counsel and fair trial. And Plaintiff's Fifth and Fourteenth Amendment Right of the United States Constitution.

SIXTH CAUSE OF ACTION

61. That the actions of Defendant's #1 through #21, as stated in paragraphs 25 through 53 of this complaint, violated established policy and procedure at the Department of Corrections Adult Correctional Institutions, as well as state law.

## RELIEF

Wherefore, the Plaintiff request that this Honorable Court enter the following relief:

A. Issue Declaratory Relief against the named Defendant's stating that they did in fact violate the Plaintiff's right to be free of cruel and unusual punishment, isolation, segregation, multiple hours confined in shackles, Defendant's did conspire to cover up the crime of assault etc., to hide the fact Defendant's were in dereliction of duties.

B. Issue an injunction against the Defendant's ordering them to comply with established procedures and policy in incidents that involve security and safety. Defendant's are in dereliction of duties, submitted fabricated reports, and false interview statements, and have committed cruel and unusual punishment upon Plaintiff.

C. Grant Compensatory Damages in the amount of Forty-Five Dollars ($ 45.00) for loss wages while in isolation, segregation, and denied employment due to infraction of assault, to run retro active to 7th day of October, 2005 on compensatory damages. Grant compensatory damages for all medical payments to run retro active to 7th day of October, 2005 the day Plaintiff started being charged for medical treatment after Plaintiff was a victim of assault. Grant compensatory damages for all medical cost to run retro active to the 7th day of October, 2005.

D. Grant Punitive Damages in the amount of one thousand dollars ($1,000.00) against each of the named Defendants, et al.

E. Grant any and all other relief that the Plaintiff might be entitled to under the law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 2/24/06

Juan G. Evora, Pro Se

Juan G. Evora, Pro se