UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JUAN EVORA

v. C. A. NO. 06-094 S

A. T. WALL, et al

**DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TO SUMMARY JUDGMENT**

Now comes Defendant A. T. Wall and hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the instant amended complaint, or in the alternative for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, as and for the reasons proffered in the accompanying Memorandum. All remaining named defendants, having not been properly served with the instant amended complaint, hereby make a special appearance through counsel for the specific purpose of filing and asserting the instant motion.

DEFENDANTS,
By their Attorney,

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920

CERTIFICATION

The undersigned hereby certifies that on this, the 24th day of July, 2006, I mailed a true copy of the within Defendants A. T. Wall's Motion To Dismiss and accompanying Memorandum to Juan Evora at P.O. Box , Cranston, RO 02920.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JUAN EVORA

V. C. A. NO. 06-094 S

A. T. WALL, et al

## MEMORANDUM

Plaintiff, who at all pertinent times was a Rhode Island penal inmate, brings this action pursuant to 42 USC 1983 against A. T. Wall, Director of the Department of Corrections, approximately 21 other members of its staff.

## FACTS

The Plaintiff's amended complaint alleges that on October 7, 2005, the Plaintiff was struck by another inmate from behind; that the Plaintiff suffered injuries; that he had a struggle with the assailant, who finally fled. Plaintiff alleges that the assailant was a known racist-gang member of the "Lost Boys." Plaintiff alleges that when the assault took place he was rendered unconscious and disoriented. Plaintiff alleges that he reported, without delay, the assault to Officer Killier. **See Plaintiff's Amended complaint, Paragraphs 28 and 29.** Officer Killier ordered Plaintiff to walk to the medical unit. That Plaintiff was viewed by Defendants Capt. Bannon, a John-Doe nurse and a correctional officer. Capt. Bannon ordered the Plaintiff to be transported to an outside medical facility. On October 7, 2005, the day of the assault, Acting Chief Joseph Forgue of the Special Investigation Unit, Department of Corrections directed Investigator David Baptista and Investigator Linda Rose to conduct

interviews with the Plaintiff; that said Investigators took pictures of the Plaintiff, and asked him of the type of weapon that was used against him; Plaintiff requested that videotape surveillance, that should have recorded the incident, be reviewed to discover the assailant, which caused the Investigator to get upset and leave the hospital. **See Paragraph 31 of the Amended complaint**. Plaintiff, on the same day, was transported to "Stat Care Facility" in Cranston, Rhode Island for medical care, and was transported by John Doe correctional officer; "Stat Care" referred Plaintiff to Rhode Island Hospital Trauma Unit as a result of his injuries being too severe to be treated there. At Rhode Island Hospital, X-rays were taken and it was reported to the Plaintiff that he had suffered a broken nose, eye socket and needed sutures over his right eye. **See Plaintiff's Amended complaint, Paragraph 32.**

On October 12, 2005, Defendant Lt. Duffy formally charged Plaintiff with the disciplinary infraction of fighting based on events and statements from Investigator Baptista. Plaintiff alleges that he, at this time, requested to see certain surveillance tapes, which would have identified the assailant, and would have shown his involvement in the altercation with the other inmate. See **Amended complaint, Paragraph 36**; that Defendant Frost, Video Security Specialist with the Department of Corrections, was in dereliction of his duties by not reviewing all video surveillance tapes, which were operating at the time of the assault; that the Defendants would have done a thorough and full investigation without delay, if the Plaintiff had not been a practicing Muslim, who is "Puerto Rican/Cape Verdean." **See Plaintiff's Amended complaint, Paragraph 37**; that Mike Frost destroyed evidence knowingly. **See Plaintiff's Amended complaint, Paragraph 37.**

Plaintiff was found guilty without any supporting evidence, without being allowed to produce evidence to prove his innocence. "Not allowed to prepare a defense," and placed in segregation, with limited material. **See Plaintiff's Amended complaint, Paragraph 38;**

that on October 14, 2005, Plaintiff's disciplinary hearing was held at Medium Security; Lt. Jankowski presided over the hearing and Defendant Adult Counselor Lisa Soderlund was assigned to the Plaintiff for assistance. Plaintiff was charged with the infraction of fighting and Plaintiff testified that he was attacked from behind and had to defend himself. **See Plaintiff's Amended complaint, Paragraph 39**. The Plaintiff was found guilty by the Disciplinary Board based on the report and inmate's statement that he did engage with Inmate Grilli in an altercation. Plaintiff appealed the guilty finding to Defendant Warden Whitman, which on November 4, 2005 was denied by the Warden. Plaintiff was ordered to fifteen (15) days of disciplinary confinement and sustained fifteen (15) days loss of good time.

With respect to the allegations against Defendant Wall, Plaintiff alleges that on November 1, 2005, Plaintiff appealed the Warden's review to Director Wall. Plaintiff alleges that Director Wall did not respond to his correspondence; however, that Defendant Wall did correspond with the Plaintiff on October 24, 2005 wherein he indicates "after reading your letter dated 10-12-05, a member of the staff contacted one of the lieutenants in the Plaintiff's facility and learned that the proper procedure for requesting an attorney telephone call while in disciplinary confinement and to submit a request to the Plaintiff's housing lieutenant." Director Wall also indicated that with respect to filing external amended complaints, he could contact the Rhode Island State Police, which are situated on the grounds, and provided a telephone number, and that he could also write to the State Police, whose offices are located on the Department of Corrections premises. Plaintiff alleges that the Director also indicated to him that he could contact the Attorney General's office or "DARE" (Direct Action for Rights and Equality). Plaintiff indicates that the Director informed him that his office would not make such a request on his behalf and that he had confidence in the Department of Corrections' investigatory units. The Director also referred the Plaintiff to the Department of

Corrections Office of Inspections regarding staff misconduct and gave him the telephone number for the same. Finally, Director Wall indicated to the Plaintiff that he was going to forward a copy of his letter to the Chief of the Special Investigations Unit, Robert Catlow and would ask for an investigation into the Plaintiff's amended complaints. Based on these allegations, the Plaintiff brings this action against Director Wall.

## FEDERAL RULE OF CIVIL PROCEDURE 12(b(6)

When considering a motion to dismiss under F.R.C.P. 12(b)(6), the Court must accept all of the facts pleaded as true and construe those facts in a light most favorable to the non-moving party. **Scheuer v. Rhodes**, U. S. 232, 236 (1974); **Knight v. Mills**, 836 F.2d 659, 664 (1st Cir. 1987). The amended complaint should not be dismissed for failure to state a claim unless it appears beyond doubt from the pleading that the party opposing the motion can prove no set of facts, which would support a claim for relief. **Conley v. Gibson**, 355 U. S. 41, 45-46 (1957); **Melo-Tone Vending, Inc. v. United States**, 666 F.2d 687, 688 (1st. Cir. 1981).

## SUMMARY JUDGMENT

## RULE 56

Rule 56 of the Federal Rules of Civil Procedure provides the granting of summary judgment when the moving party has "shown that there is no genuine issue as to any material fact and that . . . [they are] . . . entitled to judgment as a matter of law." The moving party bears the burden of initially showing that there are no genuine disputes as to material facts in the case. **Adickes v. F. H. Kress & Co.**, 398 U. S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Whether in fact the material to the outcome of the case is determined by the

substantive law governing the issues. **Anderson v. Liberty Lobby, Inc.**, 447 U. S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the contentions on which the non-moving party would have the burden of proof at trial. **Celotex Corporation v. Catrett**, 477 U. S. 317 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has come forward with such a showing, the burden shifts to the opposing party to establish that there are material facts in dispute. **Matsushita Electric Industrial Company v. Zenith Radio Corp.**, 475 U. S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e). The non-moving must do more than simply show that there is "some metaphysical doubt as to the material facts." **Matsushita** at 596. Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. See, **Anderson v. Liberty Lobby**, 477 U. S. at 248 (1986) (interpreting the "genuineness" requirement).

## CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

All named defendants are sued in their official capacities as state actors. United States Supreme Court in **Will v. Michigan**, 109 S. Ct. 2304 (1989), held that under 42 U.S.C. Section 1983, State officials sued in their official capacities as state actors where monetary damages are sought, constitutes an action against the State itself in light of the fact that it is the State that is the real party and interest. The State is not a "person" within the meaning of § 1983. Accordingly, all monetary claims against Defendants in their official capacity must be dismissed pursuant to the Supreme Court's ruling in **Will**.

## SUPERVISORY LIABILITY/DEFENDANT A. T. WALL

A supervising person, such as the Director of Corrections, cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. **Maldonado-Denis v. Castillo-Rodriguez**, 23 F. 3d 576, 581 (1st. Cir. 1994). A superior may be held liable under § 1983 only on the basis of his or her own acts or omissions. Id. A superior may be liable by establishing a policy or following a custom that leads to the challenge activity. Id. at 582. A superior may also be liable if he had actual knowledge of the wrongful activity or he would have had such knowledge but for his deliberate indifference to this activity, and he had the authority to require changes but did not do so. Id. A successful plaintiff must show that the superior was deliberately indifference, that his conduct caused the subordinate's actions violative of the plaintiff's constitutional rights. Id. This connection may be shown if the supervisor knew of, approved or intentionally ignored the conduct. Id. This connection may also be shown by past history of such conduct on a wide-spread basis known to the superior and sufficient to alert him to current problems. Id. If he fails to implement necessary changes, he may be liable. Id. Isolated instances of unconstitutional activity are insufficient to show deliberate indifference. Id.

In the instant case, other than naming Director Wall as a defendant, the amended complaint sets out this scenario which clearly illustrates that not only was Director Wall not non responsive or indifferent, however, points out that the Director referred Plaintiff in the right direction relative to his request for an attorney to be present at a disciplinary hearing and also referred Plaintiff to the State Police, and DARE for filing external amended complaints concerning conditions of confinement. Director Wall also referred the Plaintiff to the Department's internal inspections office, which is responsible for investigating staff misconduct. Defendant Wall personally forwarded a copy of his letter to the Chief of the

Special Investigations Unit. Plaintiff's allegations against Director Wall clearly do not state a claim in that he has failed to allege a culpable state of mind or facts which could infer the Director having a culpable sate of mind at the time of his actions. Plaintiff does not allege that Defendant Wall was involved with any other Defendant concerning the alleged wrongdoings of other staff members, and accordingly, Plaintiff can prove no set of facts in support of his claim against Defendant Wall and such claims should be dismissed. Accordingly, the plaintiff has failed to allege and establish the required nexus between A. T. Wall and the alleged wrongful conduct. The amended complaint simply alleges in conclusional fashion that the "defendant" violated his constitutional rights.

A prisoner complaining that conditions of the confinement constitute cruel and unusual punishment in violation of the Eighth Amendment must show a culpable state of mind on the part of prison officials. **Wilson v. Seiter**, 501 U. S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991). The Supreme Court has held that it is the "unnecessary and wanton confliction of pain" that violates the Eighth Amendment. **Rhodes v. Chapman**, 452 U. S. 337, 346, 69 L. Ed. 2d 59, 101 S. Ct. 2392. Plaintiff in this case has failed to allege a culpable state of mind on the part of defendant Wall. In a Section 1983 action allegations amounting to negligence are insufficient to state a claim upon which relief may be granted. **Daniels v. Williams**, 474 U. S. 327 (1986); **Parratt v. Taylor**, 451 U. S. 527 (1981).

## DEFENDANT MAROCCO

With respect to the amended complaint and Defendant Marocco, the amended complaint, aside from naming Joseph Marocco as a Defendant, makes absolutely no mention whatsoever concerning any type of involvement by Defendant Marocco. Accordingly, Defendant Marocco should be dismissed from the instant action.

**DEFENDANT CAPTAIN BANNON**

Plaintiff alleges that on the day in question when he entered the medical unit after the alleged attack, Defendant Bannon, along with an unidentified staff nurse and correctional officer, visually inspected his hands for evidence of being involved in an altercation and Captain Bannon then ordered the Plaintiff to be transported to an outside medical care facility. These are the only allegations asserted against Captain Bannon. Plaintiff seeks to impose liability on Captain Bannon simply because Bannon did a visual inspection of his body and then ordered that he be transported to an outside medical care facility for treatment. Plaintiff's claims against Captain Bannon under the Eighth Amendment clearly fall short of triggering any liability for deliberate indifference to serious medical needs and must be dismissed.

**DEFENDANTS FORGUE, BAPTISTA AND ROSE**

Defendants Forgue, Baptista and Rose are all Investigators with the Special Investigations Unit at the Department of Corrections. The Special Investigations Unit is charged with the duty of investigating alleged wrongdoing on the part of inmates. The amended complaint alleges that on October 7, 2005, Acting Chief Investigator Joseph Forgue, as well as Investigators Baptista and Rose, conducted an interview with the Plaintiff, took pictures and asked him questions about others involved. Plaintiff alleges that he requested that the Investigators retrieve possible video surveillance that may have recorded the incident in question. At this request, Plaintiff alleges that the three Investigators became upset and left the hospital where the interview took place. See **Paragraph 31 of the Amended complaint.** Plaintiff also alleges that the Defendants/Investigators fabricated reports from their

investigation, which formed the basis for he to be transported from the Intake Service Center Isolation Unit to the Medium Security segregation unit. Plaintiff alleges that evidence that was known to the Department of Corrections was destroyed "to cover up the crime scene." **<u>See</u> Paragraph 34 of the Amended complaint.** Plaintiff alleges that the actions of the three investigative Defendants violated his rights under the Fourteenth Amendment to the United States Constitution.

In summary, Plaintiff alleges that the three investigative Defendants took his statement, took pictures, and then destroyed evidence relative to the attack. Plaintiff failed in any way to identify exactly what evidence was destroyed by the Defendants, and if not destroyed, how it would have changed the outcome to his benefit. The allegations are merely that the investigative Defendants were doing their job, that is, to interview the Plaintiff, take pictures of the Plaintiff and any sustained injuries. Accordingly, Plaintiff can prove no set of facts in support of his Fourteenth Amendment claims against Defendants Forgue, Baptista and Rose.

## <u>DEFENDANT LIEUTENANT DUFFY AND WARDEN WHITMAN</u>

Plaintiff alleges that on October 12, 2005, Defendant Lieutenant Duffy read the Plaintiff formal charges underlying a disciplinary infraction. It is not alleged that Lieutenant Duffy had anything to do with the investigation that took place surrounding the altercation, but simply read the Plaintiff a formal administrative disciplinary charge against him. Plaintiff was found guilty of the infraction of fighting with Inmate Grilli and received fifteen (15) days of disciplinary confinement and loss of good time. However, these allegations fail to state a claim of a due process violation. The United States Supreme Court in **<u>Sandin v. Conner</u>**, 515 U. S. 472 (1995) has held that being confined to thirty (30) days of punitive segregation for

any one incident does not amount to an atypical hardship in relation to the ordinary incidents of prison life, giving rise to any protected interest under the Constitution.

The only allegations asserted against Warden Whitman allege that on October 14, 2005, Plaintiff's appeal of the guilty disciplinary board finding was denied and Plaintiff was provided with fifteen (15) days of punitive segregation and loss of good time. Plaintiff alleges that the Warden's statement is as follows:

> "A review of the materials pertaining to your disciplinary hearing has resulted in the following determination on your request for Warden's review, denied, rationale based on information about infraction."

Plaintiff merely mentions Defendant Whitman in Paragraph 40 of the Amended complaint and does not allege any wrongdoing on his part. Plaintiff simply indicates that his appeal was denied by the Warden and indicates the sanction given. On these grounds, and also on the same grounds as offered on behalf of Defendant Duffy, the allegations against Defendant Whitman should be dismissed.

**DEFENDANT SODERLUND**

Plaintiff alleges that on October 14, 2005 at his disciplinary hearing, he was represented by Adult Counselor Lisa Soderlund. Defendant Soderlund's duties as an Adult Counselor with the Department of Corrections in part is to assist inmates during the disciplinary process. Plaintiff also alleges, against this Defendant, that he spoke with her on October 27, 2005. There are no other allegations asserted against Defendant Soderlund.

Plaintiff has completely failed to allege any wrongdoing on the part of Defendant Soderlund and accordingly, his claims asserted against her should be dismissed.

**DEFENDANT/LIEUTENANT JANKOWSKI**

Plaintiff alleges that Lieutenant Jankowski was the Disciplinary Board Hearing Officer on October 14, 2005 relative to the charge against Plaintiff for fighting with Inmate Grilli. Plaintiff merely indicates that during the hearing, he requested the videotape that would have recorded the altercation in question. However, on the basis that the sanction received by Plaintiff doesn't give rise to a constitutional deprivation or liberty interest as per the holding of the United States Supreme Court in **Sandin**, the claims against Lieutenant Jankowski must be dismissed.

**DEFENDANT FROST**

Plaintiff alleges that Defendant Frost, a video security specialist, was in dereliction of his duties by not reviewing all video surveillance tapes, which would have memorialized the events where the altercation occurred. **See Paragraph 37 of the Plaintiff's Amended complaint.**

Michael Frost is a Security Specialist with the Department of Corrections and is posted at the Medium Security facility, where the altercation occurred. Mr. Frost's duties include periodic inspection of all cameras existing in the Medium Security facility to make sure they are operating properly and to maintain the cameras. If requested, Mr. Frost will duplicate a recording contained in any camera of a particular event in question. However, he would not do so upon his own initiative. It is not Mr. Frost's duty to monitor any particular camera in order to evaluate events that may have occurred and was recorded. Mr. Frost does not recollect anyone with the Department requesting that he duplicate the recordings of any events that took place and are subject to this civil action. **See Affidavit of Michael Frost**. Accordingly, Plaintiff's allegations against Michael Frost do not rise to a constitutional dimension and should be dismissed.

## FIRST AMENDMENT CLAIM

Plaintiff alleges that after the altercation, he was placed in an isolation unit and was denied any participation in religious services in violation of his First Amendment rights under the United States Constitution. **See Paragraph 33 of Plaintiff's Amended complaint**. However, according to the amended complaint, two weeks subsequent on October 22, 2005, Plaintiff was allowed a visit by "clergy member, Imam Abdul Hamid, also the Imam of the whole state of Rhode Island." Plaintiff then describes the conversation that he had with the Imam on that day. **See Paragraph 47 of the Plaintiff's Amended complaint.** Both Plaintiff and Inmate Grilli were disciplined as a result of their participation in a physical altercation. Both men were given a sanction of punitive segregation, the Plaintiff being required to serve fifteen (15) days in segregation and Inmate Grilli, twenty (20) days.

It is well recognized that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, in that the prisoner has the right to participate in practices, which are an integral part of his religious belief. **Bell v. Wolfish**, 441 U. S. 520, 545 (1979); **Loss v. Coughlin**, 669 F. Supp. 1235, 1238 (S.D.N.Y. 1987); **Moorish Science Temple of America v. Smith**, 693 F.2d 987, 990 (2d Cir. 1982).

In **Alym v. Miles**, 679 F.Supp. 1 (W.D.N.Y. 1988), the Plaintiff there claimed that he made a written request to the Deputy Superintendent for permission to attend services, which would afford him an opportunity to practice his Muslim faith. Plaintiff had been given a period of one (1) year in punitive segregation as a result of a disciplinary infraction. The Plaintiff's request was denied and the Plaintiff filed a Section 1983 action on the grounds that

his First Amendment rights had been deprived. The United States District Court For The Western District of New York upheld the prison administrator's denial of the Plaintiff's request for religious services on the grounds cited by the administration that Plaintiff having access to the general inmate population would pose a threat to security. In the instant case, Plaintiff, two weeks after his confinement in isolation, was afforded, as per the allegations contained in the amended complaint, a visit by the Imam, where he outlines a lengthy discussion between them. It is clear from the amended complaint itself that the Plaintiff was permitted to practice his religion and to participate in discussions with the Imam for the State of Rhode Island. The right to exercise one's religion, though entitled to a 'preferred' position in the catalogue of constitutional rights, even in the prison context is not an absolute right. **Sweet v. South Carolina Department of Corrections**, 529 F.2d 854, 863 (4th Cir. 1975). While the freedom to believe is absolute, the exercise of religion is not. **Sharp v. Siegler**, 408 F.2d 966, 970 (8th Cir. 1969). Prison authorities, accordingly, may adopt any regulations dealing with the exercise by an inmate of his religion that may be reasonably and substantially justified by considerations of prison discipline and order. So long as the prison authorities provide the inmate with a reasonable opportunity for the exercise of his religious tenets in a manner that is substantially warranted by the requirements of prison safety and order, there is no violation of the inmate's constitutional rights. **Sweet**, supra. Because of the need for increased security in segregation units, prisons are permitted to impose restrictions on access to clergy that are greater than those imposed on inmates in the general prison population, as long as access is permitted in a significant and essential way. **McClaflin v. Pearce**, 743 F.Supp. 1381, 1385 (D.Or. 1990). **Allen v. Toombs**, 827 F.2d 563 (9th Cir. 1987). Accordingly, Plaintiff who was in punitive segregation for fifteen (15) days was permitted

access to the Imam during said period and thus, his claims relative to the First Amendment should be dismissed.

## DEFENDANTS BIBEAULT AND COOPER

In Paragraph 28 of the Plaintiff's amended complaint, it is alleged that on October 7, 2005, Defendants Bibeault and Cooper left their posts unattended to watch video movies on television and because of this, Plaintiff was assaulted by Inmate Grilli, a known racist gang member. These are the only allegations asserted against these two Defendants. Plaintiff alleges that Defendants Bibeault and Cooper violated the Eighth Amendment in abandoning their posts and not protecting the Plaintiff from attack from other inmates.

The correct standard for an Eighth Amendment conditions of confinement claim requires a knowing disregard of "excessive risks to inmate health or safety." **Farmer v. Brennan**, 511 U. S. 825, 837 (1994). Furthermore, the condition must deprive the inmate of the "the minimal civilized measure of life's necessities" in the official involvement of a "sufficiently culpable state of mind" amounting to "deliberate indifference" to a "substantial risk of serious harm to an inmate." **Barney v. Pulsipher**, 143 F. 3d 1299, 1310 (10th Cir. 1998). Prison officials are responsible to provide inmates with adequate food, clothing, shelter, medical care, and must "take reasonable measures to guarantee the safety of the inmates." **Hudson v. Palmer**, 468 U. S. 517, 526-527 (1984).

Plaintiff, in his amended complaint, merely alleges that Defendants/Officers Cooper and Bibeault simply left their posts unattended to go watch videos. There is no allegation that said officers knew or should have known of Plaintiff allegedly being attacked by Inmate

Grilli, and there is certainly no allegation that said Officers maintained a culpable state of mind amounting to deliberate indifference, or that there existed a substantial risk of harm to the Plaintiff. It is not as if Plaintiff alleges that defendants knew that inmate Grilli maintained an intent to harm Plaintiff and ignored the same. Accordingly, the claims against Officers Bibeault and Cooper should be dismissed.

**DEFENDANT CORRECTIONAL OFFICER KILLIER**

Plaintiff alleges that immediately after he was attacked on October 7, 2005, he immediately reported said attack to Killier; that he was bleeding from the attack and that Defendant Killier required that he walk to the medical unit within the facility. Plaintiff infers that there should be some type of liability upon Killier as a result of he not carrying Plaintiff to the Infirmary because staff did not want any blood on them. **See Paragraph 29 of Plaintiff's Amended complaint.** Additionally, Plaintiff alleges that the Defendants' investigation entailed personally viewing the hands of all inmates housed in the same module as Plaintiff, in order to determine if there was any evidence of injury; that no inmates had been found with any injuries to their hands. However, Inmate James Grilli, who resided in the module in question, went into the shower and removed his shirt and was observed by Killier as having marks on his body. Plaintiff alleges that this fact proves that the Special Investigation Unit report was fabricated. Defendants are assuming by this allegation, that the Plaintiff is asserting liability on the Defendants in alleging that Officer Killier did observe evidence on Inmate Grilli's body that would suggest that he might have been involved in a scuffle with the Plaintiff, when in fact the conclusion of the investigation stated that none of the inmates housed with the Plaintiff had any injury or markings on their bodies to suggest involvement in the altercation. However, Inmate James Grilli was, in fact, disciplined by the Department of Corrections for being involved in a fist fight with the Plaintiff on the day in

question. Departmental records, of a disciplinary hearing that took place on October 14, 2005, contained statements from Inmate Grilli that the two men had a problem earlier in the day, on October 7, 2005; that Inmate Grilli had approached Plaintiff on said date to try and resolve their differences, but was hit by the Plaintiff and defended himself. Inmate Grilli was, in fact, disciplined for his participation in the altercation with Plaintiff and given twenty (20) days of punitive segregation and twenty (20) days loss of good time. Accordingly, any visible signs of involvement discovered by Officer Killier was not held secret, and in fact, disclosed resulting in discipline being imposed on Inmate Grilli. Moreover, Defendant Killier is not a member of the Special Investigations Unit that Plaintiff alleges fabricated interview reports; nor do the allegations of the amended complaint adequately create a claim under the Eighth Amendment against Officer Killier in denying Plaintiff adequate medical care.

It's obvious from the allegations that Killier allowed Plaintiff to be seen by medical staff and permitted him to walk to the medical unit. Plaintiff's challenge in this regard, is to infer that Plaintiff should have been assisted in some way in making his way to the medical unit. However, assuming the report contained inaccuracies, Grilli was found to have been involved and was disciplined for the same. Additionally, Plaintiff doesn't indicate that he had difficulty walking, or that in walking to the medical unit, the medical attention he received was delayed or caused him further injury. Accordingly, Plaintiff's claims against Officer Killier should be dismissed.

**CONSPIRACY CLAIMS**

Plaintiff has recently amended his amended complaint to include counts pursuant to 42 USC Section 1985 and 18 USC Section 241.

Plaintiff, in Paragraph 62 of his Amended complaint, indicates that based on the Defendant's actions outlined in Paragraphs 49 to 53 of the Amended complaint. The Defendants violated 42 USC Section 1985.

42 USC Section 1985 (3):

> "Depriving persons of rights or privileges. If two or more persons in any state or territory conspire, . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, . . . in any case or conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done any act and furtherance of the object of such conspiracy, whereby another is injured and his personal property, are deprived of having and exercising any right or privilege of a citizen of the United States, the parties so injured or deprived may have an action for the recovery of damages, occasion of such injury or deprivation, against any one or more of the conspirators."

An actionable section 1985(3) claim must allege that (1) the alleged conspirators possess some racial, or perhaps otherwise, class-base, invidiously discriminatory animus, and (2) the alleged conspiracy was intended to interfere with rights protected against private as well as official encroachment. See **Griffin v. Beckenridge**, 403 U. S. 88, 102, 29 L.Ed 2d 338, 91 S. Ct. 1790 (1971); United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 833 (1983). The conspiracy allegation must identify an overt act. See **Griffin**, 403 U. S. at 93. If no racial animus is charged, a discriminatory class-based animus must be alleged. **Harrison v. Brooks**, 519 F.2d 1358, 1359 (1st. Cir. 1975). The amended complaint must allege facts showing that the Defendants conspired against the Plaintiff because of his/her membership in a class and that the criteria defining the class were invidious. **Carlos Romero-Barcelo v. Miguel Hernandez-Agosto**, et al 75 F.3d 23, 29 (1st. Cir. 1996). Federal Courts have come to insist that a amended complaint pursuant to 42 U.S.C. Section 1985(3) state with specificity the facts that support the existence of the alleged conspiracy. **Slotnick v. Staviskey**, 560 F 2d 31, 33 (1st. Cir. 1977). A specificity

requirement for claims under Section 1985(3) came to be as an effort to control frivolous conspiracy suits. **Arill v. Maiz**, 992 F.Supp. 112 (D.P.R. 1998). The conclusory allegations of conspiracy are insufficient and the amended complaint must plead in some detail, through reference to material facts, the relationship or nature of the cooperation between the State actors and the private individual. See **Arill v. Maiz**, 992 F.Supp. 116; **Tauvar v. Bar Harbour Congregation of Jehovah Witnesses, Inc.**. 633 F.Supp. 741 (D.M. 1985).

Plaintiff, in Section 1985, references Paragraph 49 through 53 of the Amended complaint, where he alleges that in January, 2006 he was criminally charged in the Sixth Division Court, Providence County with assaulting James Grilli; "that the defendants utilized the criminal justice system as a scare and reprisal to prevent Plaintiff from filing a civil action's amended complaint, which truly is malicious prosecution; state prosecutors dismissed the criminal case, refusing to prosecute; that the Defendants failed to preserve all evidence; that Defendant Killier observed marks on Inmate Grilli's body, which were conveniently not detected by the Investigators; that Defendants Kaszyk and Hiltermann told Plaintiff to take the matter to court.

The aforementioned allegations fail to state a claim pursuant to 42 U.S.C. Section 1985(3). First, Plaintiff alleges that the criminal charge was initially brought against him to prevent him from filing civil actions. However the Amended complaint also alleges that three (3) months after the charges were brought, they were dismissed by prosecutors. Plaintiff fails to mention by name any particular Defendant, who utilized the criminal justice system against him and fails to allege any specific act as to who did what.

Additionally, the report of Defendant David Baptista, who is a Special Investigations Unit member did, in fact, examine James Grilli's body for evidence of injury as noted in his report. See **Report of David Baptista and Affidavit.**

Finally, the alleged statements by Defendants Kaszyk and Hiltermann telling the Plaintiff to go Court concerning his amended complaints hardly amount to a conspiracy to prevent the Plaintiff from filing civil actions. In light of the fact that the allegations contained in the Amended complaint fail to plead with specificity the relationship or nature of the cooperation between the instant Defendants warrants dismissal of said claim.

Additionally, Dismissal of conspiracy claims under Section 1985(3) is also warranted in light of the fact that all of Plaintiff's claims, pursuant to Section 1983 warrant dismissal.

Plaintiff, in his Amended complaint, also alleges that the Defendants, as set out in Paragraphs 49 through 53 of his Amended complaint violated U.S.C. Section 241. However, 18 U.S.C. at Section 241 is a purely criminal statutory provision, and does not make damages recoverable for any actions constituting an offense of the same. **O'Sullivan v. Felix**, 223 U. S. 318 (1914). Title 18 U.S.C. Section 241 provides no basis for civil liability. **Agnew v. Compton**, 239 F.2d 226 (9th. Cir. 1956); **Aldade v. Aldade**, 616 F.2d 1089 (9th. Cir. 1980).

Accordingly, Plaintiff's claims pursuant to said statute must be dismissed.

## CONCLUSION

In light of the foregoing, Defendants urge that all of Plaintiff's claims contained in the Amended complaint be dismissed, or in the alternative, that judgment enter in favor of all Defendants pursuant to the Federal Rule of Civil Procedure 56.

Respectfully submitted,
By Their Attorney,

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue

Cranston, Rhode Island 02920
Bar No. 3864