**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**JUAN G. EVORA**

**v.** **C.A. No. 06 - 094 S**

**STATE OF RHODE ISLAND; RHODE ISLAND DEPARTMENT OF CORRECTIONS; A.T. WALL**, Director of the Rhode Island Department of Corrections; **JAKE GADSEN**, Assistant Director; **WALTER WHITMAN**, Warden, Medium Security; **KIRK KASZYK**, Deputy Warden; **ROY HILTERMANN**, Deputy; **ROBERT J. CATLOW; JOSEPH FORGUE; CAPTAIN BANNON; DAVID BAPTISTA; LINDA ROSE; MIKE FROST; LIEUTENANT DUFFY; LIEUTENANT JANKOWSKI; LISA SODERLUND; C/O BIBEAULT; C/O KILLIER; C/O TONY DOE; C/O COOPER; JOSEPH MAROCCO**; Director, Health Service Departmentof the RI Department of Corrections; and **NURSE JOHN DOE**.

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Juan G. Evora ("plaintiff"), a *pro se* inmate legally incarcerated at the Rhode Island Department of Corrections, filed an Amended Complaint pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985 and 18 U.S.C. § 241. Plaintiff named as defendants the State of Rhode Island, the Rhode Island Department of Corrections ("RIDOC"), and A.T. Wall, Director of the RIDOC. Additionally, plaintiff named as defendants the following RIDOC officials or employees: Jake Gadsen, Walter Whitman, Kirk Kaszyk, Roy Hiltermann, Robert J.

Catlow, Joseph Forgue, Captain Bannon, David Baptista, Linda Rose, Mike Frost, Lieutenant Duffy, Lieutenant Jankowski, Lisa Soderlund, C/O Bibeault, C/O Killier, C/O Tony Doe, C/O Cooper, Joseph Marocco, and Nurse John Doe (all defendants collectively referred to as "defendants").

Currently before the Court is the motion of the defendants to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgement pursuant to Fed. R. Civ. P. 56(c). Plaintiff has objected thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be granted. Therefore, I do not reach the defendants' alternative motion for summary judgement.

**Background**

The following are the factual allegations set forth in the Amended Complaint:[1]

Plaintiff, a practicing Muslim of Puerto Rican/Cape Verdean descent, is an inmate legally incarcerated at the Rhode Island Department of Corrections. Plaintiff alleges that on October 7, 2005, another inmate, James Grilli ("Grilli"), attacked him in his cell. Following a struggle between the two, Grilli fled, leaving

[1] Plaintiff's Amended Complaint is missing page 17. Since plaintiff's original Complaint is substantially the same, the Court utilized the original Complaint's page 17.

the plaintiff injured. During the time of the altercation, plaintiff alleges defendant correctional officers Bibeault, Cooper, and Tony Doe were not at their assigned posts, but instead watching television in a control center. Following the altercation, plaintiff reported the incident to defendant Killier and sought medical care. Defendant Killier directed the plaintiff to report to the prison infirmary.

While at the prison infirmary, Captain Bannon inspected the plaintiff's injuries and ordered that he be transported to an outside medical facility, a "Stat Care Facility." However, the "Stat Care Facility" examined the plaintiff and determined that his injuries were too serious. Plaintiff was thereafter transported to Rhode Island Hospital ("RIH") for medical care. RIH medical staff treated the plaintiff for a broken nose, a broken eye socket, and injuries to his shin. Plaintiff also alleges that he sustained irreparable damage to his nervous system.

On October 8, 2005, a day after the incident, plaintiff alleged that he was placed in an isolation unit at the Intake Service Center where he was deprived of privileges, including visits from clergy and his family. Plaintiff alleges that at this time he was not allowed to participate in any religious services. Thereafter, on October 9, 2005, plaintiff alleges that he was placed in the segregation unit by order of defendant Captain Bannon.

Plaintiff alleges that while in segregation, he was not permitted to call his attorney or outside law enforcement agencies. Plaintiff alleges that he wrote to defendant Wall to complain. Wall responded to the correspondence, informing the plaintiff of the proper procedure to follow when requesting to make a phone call. Plaintiff also alleges that Wall provided the plaintiff with the state police's phone number.

On October 12, 2005, plaintiff alleges that the RIDOC charged him with violating internal rules at the RIDOC, namely fighting. On October 14, 2005, a disciplinary hearing commenced. At the hearing, plaintiff asserted that any fighting that he did was done in self-defense. To support this contention, plaintiff asserts that he requested video surveillance of the area during the attack. Either his request was denied or no video-surveillance exists. The Disciplinary Board ultimately found the plaintiff guilty and sanctioned him to confinement in segregation for fifteen days with a fifteen day loss of good time credit. Plaintiff appealed the decision to defendant Warden Walter Whitman to no avail. On November 1, 2005, plaintiff unsuccessfully appealed to defendant A. T. Wall.

On October 19, 2005, plaintiff underwent surgery at RIH to remedy some of the injuries he sustained during the incident. Plaintiff complains each time he was taken to an outside medical appointment for treatment of his injuries, he was placed in

shackles. Plaintiff alleges that he has spent over 100 hours in shackles while on outside medical appointments.

Plaintiff alleges that he was thereafter criminally charged with assault, stemming from the altercation with Grilli. Grilli was also charged. The charges against the plaintiff were ultimately dismissed.

Plaintiff has filed suit seeking relief. In his Amended Complaint, plaintiff brings claims pursuant to 42 U.S.C. § 1983 alleging violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. Plaintiff also alleges a violation of 42 U.S.C. § 1985, 18 U.S.C. § 241, and various state law claims. Defendants have moved to dismiss, or in the alternative for summary judgement. Plaintiff has objected.

**Discussion**

**a. Rule 12(b)(6) Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which fail to state a claim upon which relief can be granted. In ruling on a motion filed under Rule 12(b)(6), the court must "accept the well pleaded averments of the ***complaint as true, and construe these facts in the light most favorable to the [plaintiff]." <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987). A Rule 12(b)(6) motion will only be granted when, viewed in this manner, it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-6 (1957). Under a Rule12(b)(6) motion, "a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Unverifiable conclusions, not supported by the stated facts, deserve no deference. Id. Thus, in ruling on the motion to dismiss, the pertinent inquiry is whether plaintiff's complaint sets forth sufficient factual allegations which, if proven, would support his claims of a deprivation of federal rights.

**b. 42 U.S.C. § 1983**

Plaintiff brought claims pursuant to 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... 42 U.S.C. § 1983.

Section 1983 creates a cause of action for persons who are denied a federally protected right. See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448

U.S. 1 (1980) (statutory deprivations). The initial inquiry in a Section 1983 action is (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Here, plaintiff has properly alleged that the named defendants acted under the color of state law. Thus, the only question that remains is whether the facts alleged rise to a violation of the plaintiff's constitutional rights.

**1. First Amendment Claims**

As his first basis for relief under 42 U.S.C. § 1983, plaintiff claims an interference with his First Amendment religious freedoms, applicable to the states by the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). The First Amendment provides, in pertinent part: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof;..." U.S. CONST. amend. I. Plaintiff asserts claims under both the Establishment Clause and the Free Exercise Clause of the First Amendment.

A. Establishment Clause

The Establishment Clause prevents the government from establishing a state religion. The "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or

religious faith." Lee v. Weisman, 505 U.S. 577, 587 (1992)(internal quotations omitted). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."Larson v. Valente, 456 U.S. 228, 244 (1982).

Here, no facts alleged assert that any of the named defendants forced the plaintiff to participate in religious exercises or attempted to force him to change his religious beliefs. Moreover, no facts indicate that any religious denomination is preferred at the RI DOC. Thus, plaintiff's Establishment Clause claims should be dismissed. I so recommend.

B. Free Exercise Clause

Next, plaintiff asserts a claim under the Free Exercise Clause. Under the Free Exercise Clause, all prisoners must be afforded reasonable opportunities to exercise the religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); O'Lone v. Estate of Shabazz,482 U.S. 342, 348 (1987).

The mere assertion of a religious belief does not automatically trigger First Amendment protections. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. See DeHart v. Horn, 227 F.3d 47, 51 (3rd Cir. 2000). Once such a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violated the right to free exercise

of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987) and O'Lone, 482 U.S. at 349. The standards delineated in Turner and O'Lone indicate that when a prison regulation or practice encroaches upon prisoner's rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.

The reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether accommodation of the right will disrupt the prison environment, and (4) whether an alternative exists which would fully accommodate the prisoners' rights at a *de minimis* cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989). However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. Id. at 411.

Here, liberally read, plaintiff's Amended Complaint alleges that while confined in isolation for one or two days, and while confined in segregation for 15 days, he was prohibited from practicing his religion. This allegation is subject to the standards articulated in Turner which generally cannot be resolved

solely on the basis of the Amended Complaint, the only document the Court looks to when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). However, the problem with this claim is that the plaintiff does not connect this alleged infringement of his free exercise right to any named defendant. The Court will not speculate as to which of the defendants could possible have been connected to this claim. Accordingly, plaintiff's free exercise claim should be dismissed. I so recommend.

**2. Fifth Amendment Claims**

Plaintiff next asserts a claim under the Fifth Amendment. The court is unclear as to which provision of Fifth Amendment plaintiff refers. To the extent that the plaintiff is seeking relief under the Fifth Amendment's due process clause, such a claim is without merit. The Fifth Amendment's due process clause does not apply to state actors. See e.g. Fidelity Financial Corp. v. Fed. Home Loan Bank, 792 F.2d 1432, 1435 (9th Cir. 1986).

To the extent that plaintiff claims that the charges filed in the state court following his disciplinary proceedings somehow violated the double jeopardy clause, he is mistaken. Prison disciplinary sanctions are civil in nature and do not preclude subsequent criminal prosecution for the same conduct under the double jeopardy clause. United States v. Mayes, 158 F.3d 1215, 1222 (11th Cir. 1998); United States v. Galan, 82 F.3d 639, 640 (5th Cir. 1996); United States v. Brown, 59 F.3d 102, 103-05 (9th Cir.

1995); United States v. Hernandez-Fundora, 58 F.3d 802, 806-07 (2nd Cir. 1995); Garrity v. Fiedler, 41 F.3d 1150, 1152-53 (7th Cir. 1994); United States v. Newby, 11 F.3d 1143, 1144-46 (3rd Cir. 1993).

Finally, to the extent that plaintiff is asserting any other right set forth in the Fifth Amendment, such a claim is not presented in a clear and concise manner and should be dismissed on that basis. See Fed. R. Civ. P. 8 (a) (2)(requiring "a short and plain statement of the claim" showing that the pleader is entitled to relief). I so recommend.

**3. Sixth Amendment Claims**

Next plaintiff asserts claims under the Sixth Amendment. The Sixth Amendment provides protections to those accused in criminal proceedings. See e.g. Kirby v. Illinois, 406 U.S. 682, 690 (1972). Plaintiff appears to be claiming that he was entitled to Sixth Amendment rights during his prison disciplinary proceedings. Such a claim is without merit. Prison disciplinary hearing are not "criminal prosecutions" as that term is used in the Sixth Amendment. Baxter v. Palmigiano, 425 U.S. 308 (1976); Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Accordingly, plaintiff's Sixth Amendment claims should be dismissed. I so recommend.

**4. Eighth Amendment Claims**

Plaintiff next appears to assert two claims under the Eighth Amendment. First, plaintiff contends that the correctional officers

on duty at the time of the incident with Grilli violated the Eighth Amendment. Second, plaintiff asserts that requiring him to wear shackles on medical furloughs outside the walls of the prison violated the Eighth Amendment.

A. Incident with Grilli

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. An inmate may sue a correctional facility or correctional officers under the Eighth Amendment for failure to afford adequate protection from attack by other inmates. See Farmer v.Brennan, 511 U.S. 825, 828 (1994). Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates. Id. at 833. However, not every injury a prisoner suffers at the hands of another prisoner is actionable. Id. at 834.

To demonstrate a violation of the Eighth Amendment, two requirements must be met. First, the plaintiff must allege that the deprivation is "objectively, sufficiently serious." Farmer, 511 U.S. at 828. Here, this requirement is satisfied. The facts alleged assert that the plaintiff suffered significant injuries as a result of the incident with Grilli.

Second, plaintiff must allege that the defendants had a "sufficiently culpable state of mind." Id. The culpable state of mind required is that of "deliberate indifference" to an inmate's health or safety. Id. Deliberate indifference entails something

more than mere negligence. A prison official may be liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety only if the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Id. at 837.

Thus, under the second prong, plaintiff must allege that (1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk. See id. at 835-40; Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002). Here, however, there are no facts alleged in the Amended Complaint from which the plaintiff could satisfy these elements. From all indications in the Amended Complaint, the attack by Grilli was random and a surprise to both the plaintiff and the correctional officers on duty at the time - defendants Bibeault, Cooper, and Tony Doe. No facts alleged indicate that either the plaintiff or these defendants had any prior knowledge of an unsafe condition regarding the plaintiff, or knowledge of facts from which to draw the inference that a substantial risk of serious harm existed to the plaintiff.

B. Shackles

Next, plaintiff claims that being shackled for 100 hours over the course of numerous trips to outside medical facilities violated the Eighth Amendment. Such a claim is without merit. First,

plaintiff has alleged no injury from having been shackled on these trips. Thus, he cannot demonstrate that he suffered an objectively serious injury. Farmer, 511 U.S. at 828. Second, plaintiff cannot seriously contend that legally convicted individuals serving a sentence of incarceration, such as the plaintiff, should not be required to wear shackles when transported outside of the prison's walls. To the contrary, it is perfectly reasonable to shackle inmates when they are outside of the prison's walls.

Finally, to the extent that plaintiff seeks to hold other defendants liable for some undefined Eighth Amendment violation, such claims should be dismissed since plaintiff has failed to set forth a claim in clear, concise terms. See Fed. R. Civ. P. 8 (a)(2).

Accordingly, plaintiff's Eighth Amendment claims should be dismissed. I so recommend.

**5. Fourteenth Amendment Claims**

As his final claim for relief pursuant to Section 1983, plaintiff asserts a claim under the Fourteenth Amendment's due process clause and equal protection clause. I will address each claim in turn.

A. Due Process Clause

The Fourteenth Amendment's Due Process Clause provides that a state shall not deprive any person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV. Here,

plaintiff apparently is alleging an interference with a "liberty" interest due to his temporary confinement in isolation and/or segregation.

A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty." See, e.g., Vitek v. Jones, 445 U.S. 480, 493-494 (1980)(liberty interest in avoiding involuntary psychiatric treatment and transfer to a mental institution). However, the United States Supreme Court has made clear that the Constitution itself does not give rise to a liberty interest for inmates in avoiding a transfer to more adverse conditions of confinement. Meachum v. Fano, 427 U.S. 215, 225 (1976)(there is no liberty interest arising from the due process clause itself in transfer from low to maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the state to impose"). Thus, plaintiff does not have an identifiable liberty interest directly under the Constitution.

A liberty interest may also arise from an expectation or interest created by state laws or policies. See, e.g., Wolf v. McDonnell, 418 U.S. 539, 556-558(1974)(liberty interest in avoiding withdrawal of state-created good-time credits). In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court placed significant limitations on inmates seeking to invoke due process protections from interests or expectations created by state law or policies.

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life. Id. at 484 (emphasis supplied).

Applying this "atypical and significant hardship" standard, the Supreme Court in Sandin found that an inmate's placement in segregation for thirty days did not implicate a liberty interest because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." Id. at 485. Indeed, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 486.

The Court of Appeals for the First Circuit applied Sandin in Skinner v. Cunningham, 430 F.3d 483 (1st Cir. 2005). Skinner, an inmate, had been involved in a fatal fight with another inmate and was summarily placed in segregation while the authorities investigated. Skinner's segregation lasted forty days without any disciplinary hearing. The First Circuit found that a liberty interest was not implicated since the segregation was rational, its duration was not excessive, and that the central condition- isolation from other prisoners- was essential to its purpose - the conduct of a murder investigation.

Thus, after Sandin, the initial inquiry for claims made by an

inmate alleging a violation of the due process clause during prison disciplinary proceedings is whether the deprivation complained of is "atypical and significant" in relation to the ordinary instances of prison life. If an inmate demonstrates an atypical and significant deprivation, then, and only then, procedural protections of due process come into play. See Sandin, 515 U.S. at 490.

Here, plaintiff alleged in the Amended Complaint that when he returned from RIH following the fight with Grilli, he was summarily placed in isolation for one or two days. Thereafter, plaintiff was placed in punitive segregation for his involvement in the fight for fifteen days. Plaintiff's limited confinement in isolation and punitive segregation is not "atypical and significant" within the meaning of Sandin. Id. at 486. Thus, plaintiff does not have an identifiable "liberty" interest. Accordingly, his due process claims are without merit and should be dismissed. I so recommend.

B. Equal Protection Clause

Next, plaintiff appears to assert a claim under the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause directs state actors to treat similarly situated people alike. See e.g. Washington v. Davis, 426 U.S. 229, 238-239 (1976). The Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible

considerations such as race, gender, or religion. Bizzarro v. Miranda, 394 F.3d 82, 86 (2nd Cir. 2005). To set forth an equal protection violation, a plaintiff must demonstrate intentional or purposeful discrimination, directed at an identifiable suspect class. Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977).

Here, Plaintiff's allegations of an equal protection violation are entirely conclusory. While the plaintiff asserts that the defendants would have conducted a better investigation of the incident if was not a Muslim and of Puerto Rican/Cape Verdean descent, he offers no facts that he was treated any differently from any other inmate. Indeed, the facts alleged by the plaintiff indicate that he was treated the same as Grilli. Both Grilli and the plaintiff faced internal disciplinary charges/sanctions and both were criminally charged for the incident. Plaintiff's criminal charges were ultimately dismissed. The Amended Complaint does not indicate the outcome of Grilli's criminal charges.

In any event, plaintiff has failed to set forth any facts indicating that he was treated differently because he is Muslim or of Puerto Rican/Cape Verdean descent. Therefore, I recommend that plaintiff's equal protection claim be dismissed.

**c. 42 U.S.C. § 1985**

In his Amended Complaint, plaintiff asserts a claim pursuant

to 42 U.S.C. § 1985. Section 1985(3)[2] proscribes certain enumerated conspiracies. To state a claim under § 1985(3), a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or a deprivation of a constitutionally protected right or privilege. Aulson v. Blanchard, 83 F.3d 1 (1st Cir. 1996). Moreover, plaintiff must allege that the conduct complained of resulted from an invidiously discriminatory class-based animus. Id. In other words, plaintiff must allege facts showing that (1) the defendants conspired against him because of his membership in a class and (2) the criteria for defining the class are invidious. Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975).

In support of his claims under Section 1985(3), plaintiff alleges that he was criminally charged with assaulting Grilli. Plaintiff alleges that all of the named defendants "used the criminal justice system as a scare and reprisal to prevent the plaintiff from filing a civil complaint." See Amended Complaint ¶ 50. Plaintiff also alleges that the state ultimately dismissed the

---

[2] Plaintiff asserts a claim pursuant to 42 U.S.C. 1985. Section 1985 has three subsections. The only subsection that could possibly be applicable here is subsection (3). Accordingly, this Court treats plaintiff's claim as one brought pursuant to 42 U.S.C. Section 1985(3).

criminal claims lodged against him.

Here, plaintiff's § 1985 claim falters on a few fronts. First, plaintiff has failed to allege properly any injury with respect to this claim. Second, plaintiff failed to allege that any defendant conspired against him because of his membership in a class and that the criteria for defining the class was invidious. Accordingly, plaintiff's Section 1985 claims are without merit and should be dismissed. I so recommend.

**d. 18 U.S.C. § 241**

Lastly, plaintiff asserts a claim under 18 U.S.C. § 241. However, this is a criminal statute and does not provide any basis for civil liability. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Accordingly, plaintiff's claim under 18 U.S.C. Section 241 should be dismissed. I so recommend.

**e. State Law Claims**

To the extent plaintiff asserts state law claims, I recommend that those claims be dismissed without prejudice.

**Conclusion**

Accordingly, for the reasons stated above, I recommend that the defendants' motion to dismiss be granted. Any objection to this report and recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed.R.Civ.P. 72 (b). Failure to file timely, specific objection to this report constitutes waiver of both the right to review by the district

court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986) (per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
February 13, 2007